UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

LYDIA ADAMS, as Personal Representative of the Estate of SETH ADAMS, for the benefit of LYDIA ADAMS, and RICHARD ADAMS, surviving parent; and the Estate of SETH ADAMS,

        Plaintiffs,

v.

RIC L. BRADSHAW, in his official capacity as Sheriff of Palm Beach County, Florida; and MICHAEL M. CUSTER in his individual capacity,

        Defendants.

_____/

Civil Action No. _____

## COMPLAINT

Plaintiff, LYDIA ADAMS, as Personal Representative of the Estate of SETH ADAMS, for the benefit of LYDIA ADAMS, surviving parent, RICHARD ADAMS, surviving parent, and the Estate of SETH ADAMS, hereby sue RIC L. BRADSHAW, in his official capacity as Sheriff of Palm Beach County, Florida; and MICHAEL M. CUSTER, in his individual capacity; and as grounds therefore state:

### I.  PARTIES

1.    Plaintiff, LYDIA ADAMS is one of the surviving parents of SETH ADAMS, deceased, and is duly appointed as the Personal Representative of SETH ADAMS' Estate. (See attached Letters of Administration).

2.    The potential beneficiaries of the Estate of SETH ADAMS in this action and the relationship of each to the decedent are as follows:

    a. LYDIA ADAMS, surviving parent;

    b. RICHARD ADAMS, surviving parent; and

    c. Estate of SETH ADAMS.

3. At all times relevant hereto, and at the time of his death on May 17, 2012, SETH ADAMS was a citizen of the United States and a resident of the County of Palm Beach and the State of Florida.

4. At all times relevant hereto, and at the time of SETH ADAMS' death on May 17, 2012, Plaintiff, LYDIA ADAMS, Personal Representative of the Estate of SETH ADAMS, was a citizen of the United States and a resident of the City of Palm Bay, County of Brevard, and State of Florida.

5. Defendant, RIC L. BRADSHAW, (hereinafter BRADSHAW) is the Sheriff of and a resident of Palm Beach County, Florida, a political subdivision of the State of Florida.

6. At all times relevant hereto, Defendant, MICHAEL M. CUSTER, (hereinafter CUSTER), was a deputy sheriff employed by the Palm Beach County Sheriff and was a resident of Palm Beach County, Florida.

7. At all times relevant hereto, Defendant, CUSTER, was acting within the course and scope of his employment as an officer employed by the Palm Beach County Sheriff and was acting under the color of state law, ordinance, and/or regulation.

## II. JURISDICTION AND VENUE

8. This is a civil action arising out of the wrongful death of SETH ADAMS and asserting causes of action against Defendants for wrongful death and violations of SETH ADAMS' civil rights under the United States Constitution, specifically the Fourth and

Fourteenth Amendments thereto; violations of 42 U.S.C. §§ 1983, 1988; and violations of Florida Statutes and common law.

9. This action seeks monetary damages against Defendants in excess of $75,000.00, exclusive of interest, attorneys' fees and costs.

10. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' § 1983 claim.

11. This Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367 because these claims are so related to Plaintiff's § 1983 claims that they form part of the same case or controversy.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to the claims asserted herein occurred in this district.

13. All conditions precedent to the filing of this action have either been performed or waived.

### III. FACTUAL ALLEGATIONS

14. CUSTER, at the end of his shift, on the night of May 16, 2012, while on duty as the supervisor of an undercover TAC team, parked his unmarked vehicle in the parking lot of A One Stop Garden Shop, a plant nursery, garden center, and residence, located at 1950 A Road, Loxahatchee Groves. CUSTER, without the knowledge or consent of the owners or tenants of the property, chose to physically intrude/trespass, on private property in lieu of parking in a public area a few hundred feet away.

15. CUSTER was familiar with the property and business located thereon, having previously been a patron and customer of A One Stop Garden Shop.

Case No.:
Page 4

16. Located on the property, in the immediate vicinity of CUSTER, were no parking signs and other posted warnings stating unauthorized persons were not permitted on the premises after business hours. (NO PARKING 6PM – 6AM)

17. At all times material hereto, CUSTER was a trespasser on the property and was physically intruding on posted land, which he knew, or should have known in light of the signage. Furthermore, CUSTER had the means and opportunity to call the phone number clearly and prominently displayed, in order to obtain permission and/or notify the residents or tenants of his presence, but chose not to do so.

18. At approximately 11:40 p.m., SETH ADAMS, (hereinafter SETH), who lived and worked on the premises, and whose vehicle tag and driver's license were registered to the A One Stop Garden Shop property, arrived home and parked his pickup truck with the motor still running and headlights on, 10 – 12 feet parallel to the vehicle in which CUSTER was seated. CUSTER'S vehicle, an unmarked, plain black Ford SUV, was facing west towards A Road with motor running and headlights off. The driver's side doors of each vehicle were adjacent to one another, allowing both parties to communicate directly.

19. Upon his arrival home and with the assumption of privacy, SETH, finding an unauthorized vehicle on the premises, verbally questioned CUSTER'S presence, advised him that he was trespassing, and requested that he leave immediately.

20. CUSTER, who was in an unmarked vehicle and wearing civilian clothes, failed to properly identify himself, and refused to leave, escalating the situation. CUSTER then chose to exit his vehicle and confront SETH before calling for back-up from his TAC team, knowing they were in the immediate vicinity and could respond momentarily.

Case No.:
Page 5

21. SETH exited his vehicle which remained running with its headlights on, illuminating the area. SETH, who was wearing his company shirt displaying the business logo front and back, began conversing with CUSTER in a civil manner, which was witnessed by another PBSO Deputy Drummond, who had made a U-turn in front of the A One Stop Garden Shop at A Road and then headed eastbound on Okeechobee Blvd.

22. When CUSTER exited his vehicle, he failed to take with him:

   a) A flashlight or other illumination device;

   b) A communications radio;

   c) Handcuffs;

   d) Any intermediate weapon's systems, including but not limited to, mace, pepper spray, baton, or TASER ECD.

23. CUSTER, however, was carrying in his holster, a semi-automatic Glock Model 22 .40 caliber firearm, which was not equipped with any illumination device.

24. CUSTER had received extensive specialized training as an instructor in nine different disciplines. Many of these disciplines, such as Professional Communications Skills Instructor; Monadnock Defensive Tactics Instructor; and Pressure Point Control Techniques Instructor address proper body positioning and open hand control techniques that are commonly used to deescalate a situation or generate compliance through progressively structured physical control techniques. Despite all of this training, CUSTER failed to utilize any of the techniques or strategies he is responsible for teaching in an effort to properly handle the situation he was experiencing with unarmed SETH.

25. CUSTER was also certified as a TASER ECD Instructor, Monadnock Expandable Baton Instructor, PR-24 Instructor, and O.C. Instructor. Despite his training and experience with each of these intermediate weapons, CUSTER failed to carry any of them as an intermediate

option. CUSTER gave himself only two possible responses to any potentially non-compliant situation, his empty hands or his firearm.

26. Despite extensive training as a SWAT operator/sniper, CUSTER exhibited an inability to properly assess the situation with SETH and made poor decisions, an ongoing issue as documented in CUSTER'S annual performance appraisal ending in February 2011.

27. Despite his training, rather than taking measures to calmly and professionally communicate with SETH and de-escalate any potentially hostile confrontation, or leave the premises as requested, CUSTER exacerbated the situation by being hostile, rude, combative, and abusive.

28. Despite the fact that SETH was wearing a shirt bearing the name of A One Stop Garden Shop, and having informed CUSTER that he lived on the premises, SETH attempted to return to his truck to retrieve identification in order to verify his identity to CUSTER.

29. Whereupon, CUSTER approached SETH'S pickup truck and kicked the driver's door closed with such force that he dented the door.

30. SETH then advised CUSTER that the parking lot was equipped with video surveillance cameras which had recorded the entire episode.

31. CUSTER returned to his vehicle and called for backup. Then, knowing that there were other deputies who were participating in the surveillance operation in the immediate vicinity who would be responding immediately, and in the complete absence of any credible threat of death or great bodily harm, CUSTER drew his pistol and pointed it at SETH.

32. Despite the fact that SETH was unarmed and several feet away from his truck, CUSTER then fired a shot at point blank range, the bullet passing through SETH'S right forearm and fracturing bone.

33.     CUSTER, knowing that he had shot and injured SETH, continued firing his weapon, striking SETH with at least two more bullets which entered his chest, perforating his right lung, liver, stomach, and spleen.

34.     Although he was trained in open hand combat tactics and had other non-lethal alternative intermediate weapon's systems readily available, CUSTER, in violation of established policies, procedures, and protocols, elected to use only deadly force in subduing SETH, who he had never placed under arrest.

35.     SETH, seriously wounded, was able to walk away from CUSTER, move to the closed and chained gate, open the gate, and walk approximately three hundred feet, into the nursery before collapsing, in an attempt to reach the house where he lived with his brother and sister-in-law.

36.     Despite being a certified First Aid/CPR Instructor and knowing that SETH was wounded and incapacitated, CUSTER failed to even attempt to locate SETH and render aid, even after other deputies arrived on the scene to provide assistance and backup.

37.     SETH, unable to reach his home, called his brother and sister-in-law from his cell phone, advising them that he had been shot and pleading for help.

38.     CUSTER, knowing what had transpired, failed to advise the other deputies on the scene of the circumstances surrounding the shooting and participated in restraining SETH'S brother and sister-in-law, who came running to the gate seeking help for SETH, not knowing who had shot him, thereby preventing them from rendering aid as well.

39.     SETH, after multiple resuscitations, was pronounced dead while undergoing surgery at St. Mary's Hospital at 1:58 a.m. on May 17, 2012, as a result of his gunshot wounds.

Case No.:
Page 8

40. The shooting of SETH by CUSTER was a willful, wanton, intentional, inappropriate, unwarranted, and unjustified excessive use of deadly force.

### COUNT I-VIOLATION OF 42 USC §1983 (POLICY, CUSTOM, OR USAGE OF PALM BEACH COUNTY SHERIFF)

41. Plaintiff repeats and incorporates the allegations contained in paragraphs 1-40 as if fully stated herein.

42. This is an action for damages against BRADSHAW, in his official capacity as the Sheriff of Palm Beach County, for the deprivation of SETH's Fourth and Fourteenth Amendment rights in violation of 42 USC § 1983.

43. At all times material hereto, the employees, agents and/or officers of BRADSHAW, including the officer named as a defendant herein, were acting under the color of state law and pursuant to the policy, custom and/or usage of the Palm Beach County Sheriff's Office.

44. The Palm Beach County Sheriff's Office, created and allowed a policy, custom or usage whereby its sheriff's deputies detained individuals without probable cause, used excessive force when doing so, and failed to give proper medical treatment to suspects that required medical treatment including SETH.

45. The Palm Beach County Sheriff's Office, created and allowed a policy, custom or usage whereby it failed to adequately supervise, discipline and train their employees, agents and deputies, including CUSTER, in the appropriate use of deadly force.

46. The Palm Beach County Sheriff's Office, through its policy, custom or usage, also hired deputies who were substandard and who were not properly trained and disciplined, including CUSTER, who lacked sufficient training on the proper use of firearms,

Case No.:
Page 9

communications skills, defensive tactics skills, and decision making skills, and who, in previous evaluations, was known to have "difficulty assessing critical incidents and making sound decisions under pressure."

47. BRADSHAW and other agents, servants, and/or employees of the Palm Beach County Sheriff's Office, ratified the misconduct of CUSTER, against SETH including the use of excessive force and his failure to provide medical care for SETH by failing to discipline CUSTER; failing to conduct a thorough shooting investigation; white washing the shooting; covering up CUSTER'S misconduct; and changing certain investigation reports.

48. The failure of Palm Beach County Sheriff BRADSHAW to: properly supervise officers; properly discipline officers; properly train officers; properly hire and retain officers; prevent the use of excessive force during detentions; and provide proper medical treatment to suspects in need of such treatment constitutes deliberate indifference, willful conduct, and knowing conduct towards the public in general and specifically towards SETH.

49. The employees, agents and officers of the Defendant, Palm Beach County Sheriff, including CUSTER, through their above-described actions, deprived SETH of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be secure in their persons against unreasonable seizures including the use of excessive force.

50. As a direct and proximate foreseeable result of the Fourth Amendment violations and misconduct of the employees, agents and sheriff's deputies of the Palm Beach County Sheriff, as set forth herein, SETH suffered injuries that caused his death.

51. The employees, agents and sheriff's deputies of the Palm Beach County Sheriff, BRADSHAW, his employees, agents and sheriff's deputies, through their actions described

Case No.:
Page 10

above, deprived SETH of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

52. As a direct, proximate and foreseeable result of the Fourteenth Amendment violations and misconduct of the employees, agents and sheriff's deputies of the Palm Beach County Sheriff, as set forth above, SETH suffered injuries that caused his death.

53. As a direct and proximate result of the above-mentioned violations of SETH'S constitutional rights in accordance with the policy, custom or usage of the Palm Beach County Sheriff, SETH suffered physical injury, pain, suffering, emotional distress, disability and death.

54. As a result of SETH'S injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 USC § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff LYDIA ADAMS, as Personal Representative of the Estate of SETH ADAMS, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against BRADSHAW, in his official capacity as the Sheriff of Palm Beach County, Florida, for the constitutional violations, civil rights violations, and acts and omissions as set forth herein and for all damages allowed by law including compensatory damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

**COUNT II—VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANT, CUSTER**

55. Plaintiff repeats and incorporates the allegations contained in paragraphs 1-40 as if fully stated herein.

56. This is an action for damages against CUSTER for the deprivation of SETH'S Fourth and Fourteenth Amendment rights in violation of 42 USC § 1983.

57. At all times material hereto, CUSTER was acting under the color of state law and pursuant to the policy, custom and/or usage of the Palm Beach County Sheriff.

58. CUSTER, through the actions described above, deprived SETH of his rights, privileges and immunities secured by the Fourth Amendment of the Constitution of the United States including the right to be free from unreasonable seizures and excessive force against his person. CUSTER also failed to provide medical care to SETH after he had been shot.

59. As a direct and proximate foreseeable result of the violations of the Fourth Amendment and the misconduct of CUSTER, as set forth above, SETH suffered injuries that caused his death.

60. CUSTER, through the actions described above, deprived SETH of his rights, privileges and immunities secured by the Fourteenth Amendment of the Constitution of the United States, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention and imprisonment, the right to be free from unlawful seizure, and those fundamental rights of due process, liberty and life as guaranteed by the Constitution.

61. As a direct and proximate foreseeable result of the violations of the Fourteenth Amendment and the misconduct of CUSTER as set forth above, SETH suffered injuries that caused his death.

62. As a direct and proximate result of the above-mentioned violations of SETH'S constitutional rights, SETH suffered physical injury, pain, suffering, emotional distress, disability and death.

63.     As a result of SETH'S injury and death, Plaintiff is entitled to recover all damages allowable for violation of 42 USC § 1983 including compensatory damages, all costs incurred in prosecuting this action and attorney's fees pursuant to 42 USC § 1988.

64.     Plaintiff is also seeking punitive damages against CUSTER because the conduct set forth above constitutes deliberate indifference, willful conduct, and intentional conduct towards the public in general and specifically SETH and this conduct caused injuries resulting in his death.

WHEREFORE, Plaintiff, LYDIA ADAMS, as Personal Representative of the Estate of SETH ADAMS, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against CUSTER, whose constitutional violations, civil rights violations, misconduct, and acts and omissions as set forth herein caused SETH's injuries and death, and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

**COUNT III—WRONGFUL DEATH ACTION PURSUANT TO §768.16-768.26, FLORIDA STATUTES, AGAINST PALM BEACH COUNTY**

65.     Plaintiff repeats and incorporates the allegations contained in paragraphs 1-40 as if fully stated herein.

66.     This is an action for damages against BRADSHAW, in his official capacity as the Sheriff of Palm Beach County, Florida, for the wrongful death of SETH.

67.     As a direct and proximate result of the negligent and intentional misconduct of CUSTER, described above, including the use of excessive force, the failure to intervene to prevent excessive force, and the failure to provide medical treatment, SETH suffered fatal injuries.

68.     The Defendant, Palm Beach County Sheriff, is vicariously liable for the negligent

and intentional misconduct of CUSTER, its employees, agents, and sheriff's deputies.

69. As a direct and proximate result of the negligent and intentional misconduct of CUSTER, SETH died, and BRADSHAW, in his official capacity as the Sheriff of Palm Beach County, is responsible for his death and damages as set forth below:

    a. LYDIA ADAMS, as surviving parent of SETH, has suffered and will continue to suffer the loss of her son's support and services and companionship, and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    b. RICHARD ADAMS, as surviving parent of SETH, has suffered and will continue to suffer the loss of his son's support and services and companionship, and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    c. The Estate of SETH ADAMS has lost prospective net accumulations and has incurred medical and funeral expenses due to SETH ADAMS' injury and death.

WHEREFORE, Plaintiff, LYDIA ADAMS, as Personal Representative of the Estate of SETH ADAMS, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against BRADSHAW, in his official capacity as the Sheriff of Palm Beach County for all damages allowed by law including compensatory damages and costs, and further demands trial by jury on all issues so triable.

### COUNT IV—WRONGFUL DEATH ACTION PURSUANT TO §768.16-768.26, FLORIDA STATUTES, AGAINST DEFENDANT CUSTER

70. Plaintiff repeats and incorporates the allegations contained in paragraphs 1-40 as if fully stated herein.

Case No.:
Page 14

71. This is an action for damages against CUSTER, for the wrongful death of SETH.

72. At all times material hereto, CUSTER, was acting under color of State law and under color of his authority as a law enforcement officer.

73. As a direct and proximate result of the misconduct of CUSTER, as described above, SETH suffered fatal injuries.

74. CUSTER'S misconduct was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

75. As a direct and proximate result of misconduct of CUSTER, SETH died, and CUSTER, is responsible for his death and damages as set forth below:

    a. LYDIA ADAMS, as surviving parent of SETH, has suffered and will continue to suffer the loss of her son's support and services and companionship, and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    b. RICHARD ADAMS, as surviving parent of SETH, has suffered and will continue to suffer the loss of his son's support and services and companionship, and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    c. The Estate of SETH ADAMS has lost prospective net accumulations and has incurred medical and funeral expenses due to SETH's injury and death.

WHEREFORE, Plaintiff, LYDIA ADAMS, as Personal Representative of the Estate of SETH ADAMS, deceased, for the benefit of his Estate and his statutory survivors, demands judgment for damages against the CUSTER, for all damages allowed by law including compensatory damages and costs, and further demands trial by jury on all issues so triable.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as of right by jury.

Respectfully Submitted,

**COHEN MILSTEIN SELLERS & TOLL, PLLC**

By: /s/ Wallace B. McCall

Wallace B. McCall, FBN: 157086
Theodore J. Leopold, FBN: 705608
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
wmccall@cohenmilstein.com
tleopold@cohenmilstein.com
Attorneys for Plaintiff