UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:14-cv-80403-HURLEY/HOPKINS

LYDIA ADAMS, as Personal Representative of the
Estate of SETH ADAMS, for the benefit of LYDIA
ADAMS, surviving parent; RICHARD ADAMS,
surviving parent; and the Estate of SETH ADAMS,

                Plaintiffs,

v.

RIC L. BRADSHAW, in his official capacity as Sheriff
of Palm Beach County, Florida; and MICHAEL M.
CUSTER, in his individual capacity,

                Defendants.

_____/

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CUSTER'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED STATEMENT OF FACTS AND MEMORANDUM OF LAW[1]

As demonstrated below, there are several genuine issues of material fact that preclude the Court from entering summary judgment in favor of Defendant Custer on either Count II or Count IV. Viewing the evidence in the light most favorable to Plaintiffs, the evidence shows that Defendant Custer knowingly shot and killed an unarmed man who was not acting in an aggressive manner and did not appear to be reaching for a weapon. This excessive and objectively unreasonable use of lethal force violated the clearly established constitutional rights of Seth Adams. Defendant Custer is not, therefore, protected by qualified or sovereign immunity, and Plaintiffs are entitled to have a jury of their peers decide the issue of Custer's liability under both 42 U.S.C. § 1983 and the Florida Wrongful Death Act.

---

[1] This document includes a statement of facts and memorandum of law in compliance with the page limits imposed by Local Rules 7.1(c) and 56.1(a).

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In determining whether the moving party has met its burden, "the court must draw all reasonable[2] inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of [the] judge.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151 (citing Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299 (2d ed. 1995)). "That is, the Court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the

---

[2] The Eleventh Circuit has explained the reasonableness standard: "In deciding whether an inference is reasonable, the Court must 'cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness.'" *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988) (quoting *Southway Theatres, Inc. v. Georgia Theatre Co.*, 672 F.2d 485, 493 (5th Cir. Unit B 1982)). "The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts." *Id.* (citing *Southway* at 495). "When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one." *Id.*

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* (citing Wright & Miller at 300).

Additionally, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Georgia Bank of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988) (citing *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1145 (5th Cir. 1973) (*en banc*), *cert. denied*, 414 U.S. 1116 (noting the high fatality rate of summary dispositions at a time before the facts have been fully developed); *Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979), *cert. denied*, 449 U.S. 820 ("Summary Judgment should not, therefore, ordinarily be granted before discovery has been completed."); *Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980) (citing *Alabama Farm Bureau*)). "The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits." *Id.* (citing *Parrish v. Board of Commissioners of the Alabama State Bar*, 533 F.2d 942, 948 (5th Cir. 1976)). "If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials." *Id.*

## STATEMENT OF MATERIAL FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed. Defendant Custer was trained in defensive tactics, which includes physical countermeasures on subjects who resist law enforcement efforts. (Deposition of Defendant Custer, attached as <u>Exhibit A</u>, at 32:14-33:5). He was also certified as an instructor in defensive

tactics, including the use of pressure point techniques to obtain compliance from persons resisting law enforcement efforts, and certified as a Taser instructor. (Ex. A at 33:13-38:12).

4.Undisputed.

5.Defendant Custer is not listed on the TAC Unit's Surveillance Log. (PBSO Tactical Operations Unit Surveillance Log, attached as Exhibit B). The only officers listed as being "assigned to surveillance" are L., Z., Mc., and S. (Id. at pp. 1 & 2). A photograph of the scene shows a large puddle several feet in front of Custer's vehicle that looks remarkably similar to a puddle of water caused by condensation from a vehicle's air conditioner, including the condensation puddle left by Custer's vehicle. (Photographs PBSO003540-3542, attached as Composite Exhibit C). PBSO never investigated the source of that condensation puddle or determined whether another vehicle was present in the parking lot prior to the Seth Adams parking his vehicle there. (Deposition of Christopher Neuman, attached as Exhibit D, 79:13-24).

6.As indicated in paragraph 5 above, there is a genuine issue of material fact regarding whether Defendant Custer was in the parking lot for the purposes of conducting surveillance as part of the PBSO TAC Unit.

7.The parking lot prominently displayed a sign stating: "NO PARKING 6PM – 6AM VEHICLES WILL BE TOWED." (Photograph PBSO003609, attached as Exhibit E).

8.Custer's grey button down shirt was untucked and obscured his belt. (Photograph PBSO003662, attached as Exhibit F). Custer was not wearing his Sheriff's I.D. around his neck when he exited his vehicle and confronted Seth Adams. (Ex. A. at 221:13-17).

9.Seth Adams did not pull up "next to" Defendant Custer's vehicle. Seth parked his vehicle 15 feet from Custer's vehicle, (PBSO Crime Scene Report, attached as Exhibit G, at p. 5), in

front of a closed gate leading into the nursery where he worked and lived. (Photographs PBSO003547-3549, PBSO003552-3553, attached as Composite Exhibit H).

10. – 21., 23.-26., 29. As indicated in paragraph 5 above, there is a genuine issue of material fact regarding whether Defendant Custer was conducting surveillance as part of the PBSO TAC Unit. Furthermore, Defendant Custer's testimony necessarily raises credibility issues that must be considered by a jury and cannot establish the factual basis needed for entry of summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (explaining court must "disregard all evidence favorable to the moving party that the jury is not required to believe").

11. – 16. Agent K. D., part of the TAC Unit on surveillance, saw Seth Adams in the parking lot standing near the front driver's quarter panel of his vehicle, within touching distance of it, and facing eastbound toward the nursery. (Deposition of K. D., Exhibit I, at 33:18-34:5; 42:22-45:11; 46:14-17; 46:25-47:3). K.D. saw Custer exiting his vehicle and appears to say something to Seth, causing Seth to look back at Custer. (*Id.* at 46:8-13; 47:10-13). Neither Seth nor Custer appeared to be angry or belligerent. (*Id.* at 50:2-15). They were standing about 10 yards apart and nothing appeared to be wrong. (*Id.* at 48:23-49:2; 49:24-25; 53:12-18). K.D. witnessed this apparently peaceful situation about 90 seconds before Custer called for help over the radio. (*Id.* at 53:6-11). Agent K.D.'s testimony directly contradicts Custer's testimony, in which he claimed that as soon as Seth stopped his truck, he began screaming profanities at Custer "as loud as a person could make their voice". (Ex. A at 213:17-214:1). Custer claimed that from the time Seth first spoke to him, Seth continued screaming and acting like a lunatic. (*Id.* at 238:9-16). Custer testified that as soon as Seth got out of his truck he "advanced on me rapidly" at a "fast paced walk," (*id.* at

242:2-18), and advanced toward him and immediately grabbed him by the throat. (*Id.* at 243:6-10).

16.     In describing how Seth grabbed him around the throat, Custer testified, "it was as hard as a man can grab you." (Ex. A at 244:2). But there was no bruising or redness on Custer's neck. (Ex. D at 43:21-45:9). And there was only a trace amount of DNA on Custer's neck area, which *might* be Seth's and could have placed there by a blood splatter, saliva, or some source other than Seth's hand contacting Custer's neck. (Deposition of Tara Sessa, attached as Exhibit J, at 100:20-101:25; 140:9-25; 150:17-151:5; 152:6-9).

17. -18. In his videotaped statement, Custer said that after he broke the choke hold, he and Seth had a "brief struggle where I was trying to push him back and we, we may have locked up for a few seconds." (Transcript of Custer's Videotaped Statement, attached as Exhibit K, at 18:3-5). Custer stated: "I can't tell you exactly if I hit him, if I kicked him or what. I don't . . . kicking him, but I remember a lot of grappling techniques." (*Id.* at 18:6-9). In his deposition, Custer testified that he broke Seth's hold with an arm sweep, struck him in his chest delivering a "sternum strike," which is designed to temporarily knock the wind out of someone. (Ex. A at 247:3-9). Custer also testified that he "even knee struck him one or two times, or tried to." (*Id.* at 245:24-25). It was following this altercation that Custer drew his firearm and pointed it at Seth. (*Id.* at 248:19-22).

19.     Custer testified that when he drew his pistol, he and Seth were standing "right in the middle" between their vehicles. (Ex. A at 249:18-23).

20.     According to Custer and the Event Chronology created by the PBSO, Custer radioed for help before shooting Seth. (Ex. A at 258:6-10; 258:16-20; Event Chronology attached as Exhibit L at p. 1). But Agent B. S., part of the TAC Unit conducting surveillance in the area, heard the

shots fired and reported them on the radio <u>before</u> Custer radioed for help. (<u>Ex. I</u> at 58:19-59:3; 60:15-17; Deposition of B. S., attached as <u>Exhibit M</u>, at 27:13-15; 29:1-20; Deposition of C. Z., attached as <u>Exhibit N</u>, 31:1-5; 32:7-9).

21.  This fails to amount to a statement of fact as it relies on the veracity of Custer's testimony. Aside from being subject to a credibility determination by the jury, it is also suspect given Custer's extensive training in defensive tactics. (<u>Ex. A</u>, at 32:14-33:5; 33:13-38:12).

22.  Undisputed.

23. - 26., 28., 29. Custer's version of events is contradicted by the forensic evidence. Custer claims that the first time he fired his weapon, Seth was standing in the area between the open door of his truck and the interior of the truck, (<u>Ex. A</u> at 266:16-18), and Seth was less than a foot away from him. (*Id.* at 267:4-8). After firing the first shot, Custer claims he began moving backwards to create distance and continued to squeeze the trigger as fast as he could pull it, shooting Seth 3 more times while he was in the same location inside the door of his truck. (*Id.* at 270:1-271:12). Custer denies approaching Seth after shooting him. (*Id.* at 278:9-15; 285:14-21). He claims that Seth went onto the nursery property while Custer retreated behind his vehicle for safety because Custer "was convinced at that time [that Seth] had a weapon." (*Id.* at 282:11-13). The forensic evidence shows, however, that Seth's blood trail originated between the two vehicles and behind Seth's truck, not inside the front door of Seth's truck, (Deposition of James Born, attached as <u>Exhibit O</u>, at 66:5-16; 67:3-5), thereby disputing Custer's claim that Seth was reaching in the truck for a weapon. There was blood found on Custer's jeans that demonstrates he came within 6 to 9 inches of Seth *after* shooting him, while Seth's blood was dripping into a puddle, and splashed upward onto Custer's pants, (Deposition of Stuart James, attached as <u>Exhibit P</u>, 63:9-25; 65:5-8), thereby disputing Custer's claim that he backed away from Seth

during the shooting and did not approach him after the shooting began or ended. A spent projectile with blood and tissue on it was located behind and to the right rear of Seth's truck and marked with Stanchion #6. There was no evidence of any bullets having struck Seth's truck, which would have caused this bullet to ricochet or alter it's course. (Deposition of Det. Christopher Neuman, 68:6-16, attached as <u>Exhibit D</u>). Agent K.D. testified that Custer was not hiding behind his vehicle when K.D. arrived on the scene shortly after the shooting—he was standing in the doorway of the driver's side of his vehicle, with the door open. (<u>Ex. I</u> at 64:19-65:1). And, when K.D. asked Custer whether Seth was armed, Custer replied that Seth was <u>not</u> armed, but had attacked him, (*id.* at 67:10-14; 68:12-17), thereby disputing Custer's claim that he believed Seth was armed.

27.   Undisputed.

30.   Undisputed.

31.   Undisputed.

32.   There was no bruising or redness on Custer's neck. (<u>Ex. D</u> at 43:21-45:9). And there was only a trace amount of DNA on Custer's neck area, which *might* be Seth's and could have been placed there by a blood splatter, saliva, or some source other than Seth's hand contacting Custer's neck. (Deposition of Tara Sessa, attached as <u>Exhibit J</u>, at 100:20-101:25; 140:9-25; 150:17-151:5; 152:6-9). This minimal amount of DNA evidence is not consistent with Custer's claim that Seth grabbed him around the neck as hard as a man can grab someone. Stuart James testified that the blood spatter evidence showed that Custer was 6 to 9 inches from Seth *after* the shooting occurred, not *while* the shooting occurred. (Deposition of Stuart James, attached as <u>Exhibit P</u>, 63:9-25; 65:5-8). Rather than being in close proximity, the powder burns on Seth's

forearm indicates that he was shot from a distance of approximately 2 feet. (Deposition of James Born, 70:12-16, attached as <u>Exhibit O.</u>

## MEMORANDUM OF LAW

Plaintiffs have put forth sufficient evidence to create a genuine issue of material fact as to Defendant Custer's liability under both 42 U.S.C. § 1983 and the Florida Wrongful Death Act, making summary judgment inappropriate.

### I. Qualified Immunity Standard

Qualified immunity is intended to be a good faith immunity, designed to protect state actors when, in good faith, they attempt to do their job correctly and unbeknownst to them, they have violated an individual's constitutional rights. It is well settled that the doctrine of qualified immunity exists only to protect officials from civil liability in the performance of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To receive qualified immunity, a government official must first prove that he acted within the scope of his discretionary authority when the allegedly wrongful acts took place. *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). Once the government official establishes this first requirement, the burden then shifts to the plaintiff to establish qualified immunity is not appropriate. *Id.*

To determine whether qualified immunity applies, the Supreme Court has set forth a two-part test. First, the Court must ask, taking the facts in the light most favorable to the party claiming injury, whether the facts alleged establish the government officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If this answer is in the

affirmative, the Court must then determine whether the right was "clearly established" at the time of the violation. *Id.* The Court has discretion to determine in what order it addresses these questions. *Pearson v. Callahan*, 555 U.S. 223 (2009).

### II. The Court must Deny Custer's Motion for Summary Judgment on Count II—Violation of 42 U.S.C. § 1983

Ignoring, as the Court must, Custer's self-serving statements and testimony, the evidence is undisputed that Custer's use of deadly force was excessive. As demonstrated above, the evidence shows that Seth was not acting aggressively toward Custer; Seth was not reaching into his vehicle at the time he was shot by Custer; and Custer knew that Seth was unarmed prior to shooting him. The use of deadly force under these circumstances was unreasonable, excessive, and a violation of Seth's Fourth Amendment rights.

Plaintiffs' constitutional claim against Defendant Custer arises under the Fourth Amendment, which guarantees a citizen the right to be free from unreasonable searches and seizures and encompasses the right to be free from the use of excessive force during a "seizure" of the individual. *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). Determining whether the force used to affect a particular seizure is "unreasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake." *United States v. Place*, 462 U.S. 696, 703 (1983). However, because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), its proper application requires careful attention to the facts and circumstances of each particular case. *See Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

As in other Fourth Amendment contexts, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386 (1989). In other words, the issue to be decided is "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted). In addition, "reasonableness depends on not only when a seizure is made, but also how it is carried out." *Garner*, 471 U.S. at 7.

Use of deadly force indisputably implicates weighty individual interests. *Garner*, 471 U.S. at 9. For over twenty years, *Garner* has guided courts' Fourth Amendment reasonableness analysis where officers used lethal force. Accordingly, as set out in *Garner*, the use of deadly force is more likely reasonable if: the suspect poses an immediate threat of serious physical harm to officers or others; the suspect committed a crime involving the infliction or threatened infliction of serious harm, such that his being at large represents an inherent risk to the general public; and the officers either issued a warning or could not feasibly have done so before using deadly force. *See id.* at 11–12.

Viewing that facts in the light most favorable to Plaintiffs, *see Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014), the Court cannot say as a matter of law that Defendant Custer's use of force was objectively reasonable.[3] These facts demonstrate that Seth Adams was not acting

---

[3] Defendant Custer contends the Court must find that he at least had arguable probable cause to use deadly force. To make that finding, however, the Court would have to draw critical inferences in Custer's favor, which would be improper given that all inferences must be viewed in favor of Plaintiffs. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) ("In entering final summary judgment for Brown, the district court failed to draw a critical inference in a light most favorable to Skop—that Brown well knew Skop was merely trying to get into her own driveway, and he went ahead and arrested her anyway. In short, we are constrained to

aggressively toward Defendant Custer; Custer knew that Seth was unarmed; Seth was not entering his vehicle in an apparent attempt to retrieve a weapon; and Seth did not grab Custer by the throat in an attempt to choke him. Instead, Custer shot Seth from a distance while he was standing between the two vehicles, which were parked 15 feet apart, in a location where Seth, but not Custer, was legally permitted to be. Based on these facts, a reasonable jury could find that Defendant Custer's actions in shooting Seth multiple times was excessive and in violation of Seth's constitutional rights.

Furthermore, Seth's constitutional rights were clearly established, depriving Defendant Custer of qualified immunity in this action. "To determine whether a right is clearly established, the Court must look to the precedent of the Supreme Court of the United States, the Eleventh Circuit, and the Supreme Court of Florida, and interpret and apply the law in similar circumstances. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007). In the absence of case law, the Court may find the right is clearly established when the case is one of "obvious clarity—i.e. where the officer's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of fact-specific case law on point." *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002). Prior to Custer's use of excessive force, Eleventh Circuit law clearly prohibited the "gratuitous use of force." *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (*citing Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (force was excessive where

---

conclude that Officer Brown did not possess probable cause or even arguable probable cause to arrest Skop for obstruction under the law of Georgia."); *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) ("it is impracticable to conclude that arguable probable cause existed for [plaintiff's] arrest when it is unclear how much of the proffered evidence tending to support a finding of arguable probable cause was manufactured or misrepresented, or what further knowledge, if any, would be attributed to the defendants if they had investigated reasonably.")

no evidence indicated plaintiff posed threat to anyone and was not a flight risk); *Slicker v. Jackson*, 215 F.3d 1225, 1224 (11th Cir. 2000) (force was excessive where officers hit and kicked plaintiff although he was handcuffed and did not attempt to flee)); *see also Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998) (holding officer was not entitled to qualified immunity because there was no evidence suggesting plaintiff posed a danger to the officer or others when he pushed the plaintiff against a soda machine, handcuffed her, then dragged her to his police car). At the time of Seth's death, the law was clearly established that Defendant Custer's use of lethal force was excessive. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334 (11th Cir. 2002) (officer not entitled to qualified immunity for use deadly force when decedent had not threatened officer's safety and was not fleeing when he was shot); *Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th Cir. 1987) (denying qualified immunity where "jury could have reasonably believed that the officers were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather that the officers without provocation shot at a nondangerous subject").

Accordingly, the Court must deny Defendant Custer's motion for summary judgment on Count II.

### III. The Court must Deny Custer's Motion for Summary Judgment on Count IV— Violation of Florida's Wrongful Death Act

Defendant Custer claims he is immune from liability under Florida's Wrongful Death Act because he was acting within the course and scope of his employment. Under section 768.28(9)(a), Florida Statutes, however, an officer is "personally liable in tort [for actions committed] in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See Searer v. Wells*, 837 F.Supp. 1198, 1201-02 (M.D. Fla. 1993). Plaintiffs have alleged that Defendant Custer acted "in bad faith or with

malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (D.E. 1 at ¶ 74). And, viewing the evidence in the light most favorable to Plaintiffs, the evidence demonstrates that Custer acted in exactly this manner when shooting and killing the unarmed Seth Adams without provocation. Furthermore, this evidence defeats Custer's attempt to invoke the defense of justifiable use of force under section 776.012, Florida Statutes. Viewing the evidence in the proper light, Custer's use of force was far from reasonable or justifiable. The Court must, therefore, deny Defendant's motion for summary judgment on Count IV.

## CONCLUSION

As demonstrated above, there are several genuine issues of material fact that preclude the Court from entering summary judgment in favor of Defendant Custer on either Count II or Count IV. Viewing the evidence in the light most favorable to Plaintiffs, the evidence shows that Defendant Custer knowingly shot and killed an unarmed man who was not acting in an aggressive manner and did not appear to be reaching for a weapon. This excessive and objectively unreasonable use of lethal force violated the clearly established constitutional rights of Seth Adams. Defendant Custer is not, therefore, protected by qualified or sovereign immunity, and Plaintiffs are entitled to have a jury of their peers decide the issue of Custer's liability under both 42 U.S.C. § 1983 and the Florida Wrongful Death Act.

Dated: February 2, 2015

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below 33920Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF of some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Richard A. Giuffreda
richard@purdylaw.com
Purdy, Jolly, Giuffreda & Barranco, P.A.
2455 East Sunrise Blvd., Suite 1216
Fort Lauderdale, FL 33304
Phone: (954)-462-3200
Fax: (954)-462-3861
Attorneys for PBSO

Summer M. Barranco, Esq.
summer@purdylaw.com; melissa@purdylaw.com
Purdy, Jolly, Giuffreda & Barranco, P.A.
2455 East Sunrise Blvd.
Suite 1216
Fort Lauderdale, FL 33304
Phone: (954)-462-3200
Attorneys for PBSO

Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
(561) 515-1401 (facsimile)

By: /s/ Wallace B. McCall
WALLACE B. McCALL, ESQ.
Florida Bar No.: 157086
wmccall@cohenmilstein.com