UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-cv-80403-HURLEY/HOPKINS

LYDIA ADAMS, as Personal Representative of the
Estate of SETH ADAMS, for the benefit of LYDIA
ADAMS and RICHARD ADAMS, surviving
parent; and the Estate of SETH ADAMS,

          Plaintiffs,

vs.

RIC L. BRADSHAW, in his official capacity as
Sheriff of Palm Beach County, Florida; and
MICHAEL M. CUSTER, in his individual capacity,

          Defendants.

_____/

## DEFENDANTS' AMENDED MOTION FOR SANCTIONS AGAINST J. MARK DOUGAN (AND MEMORANDUM OF LAW)[1]

The Defendants, RIC L. BRADSHAW, as Sheriff of Palm Beach County, Florida and

MICHAEL M. CUSTER, in his individual capacity, through their undersigned counsel, pursuant to

the inherent power of this Court, file this their Amended Motion for Sanctions (and Memorandum

of Law) against J. Mark Dougan  and in support thereof, would state as follows:

      1.      This lawsuit arises out of an incident which occurred on May 16, 2012, between Palm

Beach County Sheriff's deputy Sgt. Michael Custer and the Plaintiff, decedent Seth Adams, at  One

Stop Garden Shop in West Palm Beach, Florida. During the incident, Adams was shot by Sgt.

Custer. The Plaintiffs bring federal civil rights claims and state law claims for Wrongful Death.

---

[1]This Amended Motion for Sanctions Against J. Mark Dougan is being filed in order to amend the relief sought herein to include Teresa Vila, Karla McCurley, and their family, friends and neighbors, among those that Mr. Dougan should be enjoined from having any contact with. The Defendants will continue to rely on the exhibits filed with the initial motion [DE 121].

2.      During the course of discovery, Plaintiff requested leave to depose Victoria Miller, also employed by the Sheriff's Office.  Plaintiff's theory is that Ms. Miller may have been having a sexual relationship with Sgt. Custer and may have been at the scene of the shooting. [2]

3.      Plaintiff bases this belief in significant part upon the sworn Affidavit of J. Mark Dougan.   (See attached Exhibit A).

4.      Mr. Dougan, a former PBSO employee and longtime critic of Sheriff Ric Bradshaw[3], interjected himself as a witness in this case through his Affidavit.

5.      As such, Defense counsel scheduled Mr. Dougan for a deposition to occur on March 12, 2015.  His father was provided the subpoena on February 24, 2015, by a process server because Mr. Dougan was not there.  Mr. Dougan is the one who provided his father's address to Plaintiffs' counsel for this purpose. On March 9, 2015, Plaintiff counsel's firm advised that Mr. Dougan would be unable to attend the deposition on March 12, 2015, because he had to take his father to the doctor. The Defendants had no objection to the request to reset the deposition to a date that would be more amenable.   Because undersigned counsel's firm had absolutely no contact with Mr. Dougan regarding the scheduling of his original deposition, the Defendants attempted to set the new

---

[2]Plaintiffs' request was denied initially.  Mr. Dougan then provided the Plaintiffs' attorneys with an Affidavit on February 4, 2015,wherein he claimed that Custer admitted, in early 2011, that he had an affair with Victoria Miller.  As a result, Victoria Miller was deposed on March 31, 2015, and, consistent with her previously submitted sworn Affidavit, denied being with Sgt. Custer the night of the shooting or having any romantic relationship with Sgt. Custer. Sgt. Custer has also denied that there was an affair or that Victoria Miller was there.

[3]His website, www.pbsotalk.com, is dedicated to "Exposing the Culture of Corruption under Ric Bradshaw".

deposition date for Mr. Dougan by coordinating, via e-mail, with staff from Plaintiffs' counsel's, office. However, after previously being told that Mr. Dougan would appear without a subpoena (See attached Exhibit B, Highlight), Plaintiffs' firm then intended to inform the Defendants that Mr. Dougan was not their witness and we could "subpoena him for whatever". (See attached Exhibit B, Highlight). However, that email was not actually sent to Jennifer Morgan (atty Giuffreda's assistant), it was sent to 'JD', who is John Mark Dougan, the witness. This enabled Mr. Dougan to reply directly to Ms. Morgan with a demeaning email, suggesting that he would not be cooperative in rescheduling his deposition and would be leaving for the Russian Federation in the middle of April, with his return perhaps being in October and that we could try and serve him in Russia. Ms. Debbie Craven (Plaintiffs' counsel's assistant) then sent the e-mail indicating that Mr. Dougan was not their witness and that we can serve him to Ms. Morgan. (Exhibit B, Highlight Page 1) (See also, attached  Exhibit C). (See also, DE 119).

6.      Due to Mr. Dougan's aggressive email, and the email from Plaintiff's firm which indicated they would not be able to produce Mr. Dougan, Defendants' counsel thought it prudent to personally serve Mr. Dougan for a new deposition. Teresa Vila, who is a process server, on behalf of the Defendants, attempted to serve Mr. Dougan with a subpoena on March 25, 2015, however, he was not at his fathers address, which is the address Mr. Dougan provided to Plaintiffs' counsel. As a result, Ms. Vila left the subpoena with Mr. Dougan's father. Consequently, the subpoena was never personally delivered to Mr. Dougan, as is required by Rule 45(b)(1) Fed. R. Civ. P. (See attached Exhibit D, email regarding service information from Teresa Vila.). As a process server, Ms. Vila had no knowledge about the facts of the case nor did she have any other involvement in the case after March 25, 2015.

7.      As a result of the failure to personally serve Mr. Dougan for deposition for the second time, counsel for the Defendants hired a private investigator (Karla McCurley) to try and locate, and personally serve, Mr. Dougan, as is required by this District. In re Matter Under Investigation by Grand Jury No. 1, 2011 WL 761234, at 1 (S.D. Fla. 2011). Klockner Namsco Holdings v. Daily Access.com, Inc., 211 F.R.D. 685, 687 (N.D. Ga. 2002). Indeed, the private investigator did contact Mr. Dougan's family in an attempt to locate his actual residence because, as a former law enforcement officer, his actual address was hard to locate, and Ms. Vila was told by Mr. Dougan's father that Mr. Dougan "comes and goes" from this address. (See attached Exhibit D) (See attached Exhibit E).  It was Investigator McCurley's contact in early April which triggered Mr. Dougan's retaliatory and threatening behavior.

8.      This behavior included the following:

(A)      Mr. Dougan called firm attorney Bruce Jolly's home phone on Saturday, April, 4, 2015.  Mrs. Jolly answered the phone.  Mr. Jolly got on the phone.  Mr. Dougan complained that a private investigator had gone to his home and had contacted his father.  Mr. Jolly told him that he was not involved in the case.  Mr. Dougan told Mr. Jolly to call the private investigator off, indicating that he could not reach attorney Giuffreda.  Mr. Jolly told Mr. Dougan not to call him again.  Despite being told not to call again, Mr. Dougan called Mr. Jolly's home again on Sunday, April 5, 2015, anyway.  This time another person at Mr. Jolly's home answered the phone.  Mr. Dougan identified himself as Mr. Stevens.  As a result, Mr. Jolly took the call.  Mr. Dougan then made explicit threats to "F- - - with your family in the most creative ways you have ever heard of."

(See Exhibit F, Dougan conversation with Jolly).[4]

       (B)    Mr. Dougan also called two of attorney Giuffreda's neighbors asking them to have attorney Giuffreda call him. In both cases Mr. Dougan left phone number 631-527-1038. Mr. Dougan also asked one of Mr. Giuffreda's neighbors whether he was in town over the Easter weekend. That neighbor, who is an elderly woman, happened to know that attorney Giuffreda was out of town that weekend.[5] However, his wife and son were home. Mr. Dougan also called Mr. Giuffreda's home phone number, which is not listed, and spoke to his wife, again leaving the 631 area code number. Mr. Dougan also called Mr. Giuffreda's daughter, Kaila, who is 22 years old, 6 times on Saturday, April, 4 from (631) 527-1038,[6] (See attached Exhibit G). He also left a voice mail asking her to have her father call him at the 631 area code number. (See Exhibit F, Dougan voice mail message to Kaila).[7] Mr. Dougan then called attorney Giuffreda's daughter on Sunday, April 5, 2015 from phone 561-370-7473. This time Kaila answered the phone. Mr. Dougan asked to speak to her father. (Attorney Giuffreda). Kaila told Mr. Dougan that her father was not there and that she lived out of state. Mr. Dougan than said "Oh, did Danny get transferred?" Kaila then asked

---

    [4]The Defendants will also be filing a Motion to File Exhibits Conventionally as the audio CD cannot be filed electronically.

    [5]See Exhibit H,— email to firm from Mr. Dougan. Mr. Giuffreda has never met or spoken to Mr. Dougan. There would be no reason for Mr. Dougan to wish Mr. Giuffreda well on vacation other then to let him know that he (Dougan) knows that Mr. Giuffreda's family was out of town, or so he thought.

    [6] This number was confirmed to be Mr. Dougan's in his letter to the Court. (DE 118)

    [7]Attorney Giuffreda's daughter's cell phone number is not listed. It is assumed that Mr. Dougan had to search the internet to find the number after figuring out who Mr. Giuffreda's children are. Attorney Giuffreda's daughter posted a resume on-line as part of a college graduating project. That resume included her correct cell phone number.

"Who is Danny?" Mr. Dougan then said with a questioning voice, "Your husband?".  Kaila then hung up the phone.  Kaila is married to a member of a uniform service attached to the Department of Home Land Security.   Her husband was transferred out of state.  Her husband's brother is also a member of the same uniform service and his name is Danny.   Danny was also transferred out of state.  (See attached Exhibit G).  Mr. Dougan in his bogus attempt to contact attorney Giuffreda was clearly attempting to intimidate attorney Giuffreda by letting him and his family know that he "knows" who we are, who our children are, who their spouses are and who our neighbors are, and that attorney Giuffreda was out of town. (See Exhibit H).  What is most telling is that Mr. Dougan never called Mr. Giuffreda directly on his cell phone or at his office at any time.  Mr. Dougan did not even leave a voice mail message at attorney Giuffreda's office.

(C)   Mr. Dougan called firm attorneys Summer Barranco and Christy Runkles[8] on Saturday, April, 4, 2015, again using the 631 area code number.  He also called Ms. Barranco using the 561 area code number. (See attached Composite Exhibit I).  Ms. Runkles did not answer her phone and Mr. Dougan did not leave a message.

(D)   Mr. Dougan contacted process server Teri Vila several times as follows:

"On Easter Sunday, April 5th, at 2;14 p.m, I received a call from 561-370-7473.  I did not answer. At 2:24 p.m., I received a call from 631-527-1038.  Again, I did not answer.[9]

At 9:48 p.m. I received another call from 561-370 so I answered it.  A man asked for Teresa.  I said this is. He said you are harassing my family and I am going to come after yours.  I asked who is this. He said, oh that's good you don't know who this is.  I hung up.

I got several more calls from this number at 9:51 p.m., 9:52 p.m. and 9:54 p.m.  I did not answer.

---

[8]While Ms. Barranco is an attorney of record in this matter, Ms. Runkles is not.  In addition, Ms. Runkles has had no involvement in this case to date.

[9]Kaila Giuffreda received phone calls from Mr. Dougan from these same phone numbers.

Then I got a call at from 74994031694 at 10:31 a.m. and another call 883510008210769 at 11:13 p.m. I did not answer.

This am, I called the Margate Police Department to file a report. The case # is [redacted because there is an ongoing investigation].

At 7:42 a.m. I received a call from 631-527-1038. I did not answer. At 8:01 a.m. I received a call from 883510008210769. I answered and the same man said Teri, I told you stop harassing my family, my father has cancer. I put the phone on speaker while I retrieved a recording device. I asked who is this. He disconnected the call." [See Exhibit D].[10]

In addition, Ms. Vila advised defense counsel by email, on April 7, 2015, that she was receiving more calls from Mr. Dougan and that she had called the police two more times, and that her son received a death threat via text message. The text message her son received implied that there were people in Miami who were unhappy and that he (her son) would be seeing Luis, Jr soon. Luis, Jr. is Ms. Vila's deceased step-son. Ms. Vila also advised that Karla (McCurley) received a similar text message regarding the unkind friends in Miami. [See Exhibit J][11]

Ms. McCurley also received a similar text making reference to the unhappy people from Miami. The text Ms. McCurley received was from 425-274-0473. Ms. McCurley also received a call from 883510008210769, an international exchange. Ms. Vila received a call from this identical number.[12]

   (E)   Mr. Dougan sent an email to members of the firm wherein he admits to

---

[10]Apparently Mr. Dougan erroneously believed that Ms. Vila was the private investigator. Of course, Ms. Vila's only involvement in this case was to attempt to serve Mr. Dougan on March 25, 2015, as stated above.

[11]As of April 7, 2015, Ms. Vila's Premier Investigation Services website included a link to a memorial to her step-son Luis, Jr.

[12]There are Internet companies that provide phone numbers for people to use that are not linked to them.

making some of these contacts, and that he knows who our children are and that undersigned counsel was on vacation. (See attached Exhibit H).

Of course the only person who had any contact with Mr. Dougan's family was the private investigator who was hired to serve Mr. Dougan personally, as a result of Mr. Dougan's insulting e-mail that he sent to Ms. Morgan on March 17, 2015, where she was only trying to work with Ms. Craven to reschedule his deposition, at his request. The private investigator, however, made no threats or inappropriate comments, nor did she contact any of Mr. Dougan's children.

9.     Litigation is oftentimes contentious, and understandably so, given some of the disputes that exist between parties, such as the instant case which involves the shooting death of a 24 year old man by a Palm Beach County Sheriff's deputy. However, here, Mr. Dougan has crossed the line in a fashion that cannot be tolerated by the Court. These actions should be investigated and Mr. Dougan should be sanctioned for his aggressive and threatening conduct toward the Defense.

10.     This Court has inherit power to hold an evidentiary hearing and discipline Mr. Dougan, and his conduct requires such action be taken to safeguard the integrity of the trial proceedings.

WHEREFORE, Defendants Sheriff Bradshaw and Michael Custer respectfully request this Honorable Court to enjoin Mr. Dougan from contacting family, friends, or neighbors of the undersigned's law firm, Teresa Vila and Karla McCurley, sanction him for attorneys' fees, and strike him as a witness in this case. Further, and in support of the foregoing Motion, the Defendants would refer this Honorable Court to the Memorandum of Law attached and incorporated herein by reference.

## MEMORANDUM OF LAW

All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Through this power, courts have the ability to punish conduct, both within their confines and beyond, regardless of whether that conduct interfered with trial. Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). This inherent power also includes sanctioning non-parties for bad faith conduct. Helmac Prods. Corp. v. Roth (Plastics) Corp., 150 F.R.D. 563, 564–67 (E.D.Mich.1993) (citing Chambers as authority to sanction non-parties). If there is bad faith conduct in the course of litigation and that conduct can be adequately sanctioned under the Federal Rules of Civil Procedure, the court should ordinarily rely on the Rules rather than its inherent power. Chambers, 501 U.S. at 50. However, if the court determines that the Rules do not provide an adequate sanction, the court may rely on its inherent power. Id. Chambers, states:

> It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson ). For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' Link v. Wabash R. Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).

An example of the court's inherit power to discipline a non-party was displayed in Helmac Prods. Corp, there, Corporate plaintiff sought to have the district court use its inherent powers to sanction the C.E.O. (but not a case party) of the corporate defendant for destroying evidence. The court ruled it had inherent power to sanction the C.E.O., ruling that while he was not a party nor subject to court order, his interest in the case was substantial and his alleged destruction of evidence was conduct that if true, needed to be sanctioned. The court set an evidentiary hearing.

Furthermore, conduct similar to Mr. Dogun's has been subject to sanction. While concerning a party to the case, a factually similar incident occurred in Maus v. Ennis. 2011 WL 6319176, at 2 (M.D. Fla. 2011). Report and Recommendation adopted, 2011 WL 6319179 (M.D. Fla. 2011) Aff'd. 513 Fed. Appx. 872 (11th Cir. 2013). There, the plaintiff sought an order requiring defendant to "participate in good faith in litigation" and sought to impose sanctions against defendant for repeated conduct throughout the course of litigation. Plaintiff asserted defendant was publicly insulting counsel and posting reports of the litigation on the internet, where defendant publicly accused plaintiff's counsel of bigotry and racism. The court, though denying the motion as moot, used its inherent authority to admonish the defendant for his behavior and warned further sanctions would be warranted if the behavior continued. Id.. Just as in the court in Muas disciplined the defendant for insults and bad conduct, here, the court can use its authority to do the same to a non-party whose conduct is more egregious, as per the authority granted in Chambers. Defendants attempts to locate and serve Mr. Dougan are part of the litigation process, however, his conduct and threats in response to that have crossed the line and action should be taken to safeguard the integrity of the trial proceedings.

WHEREFORE, the Defendants respectfully request this Honorable Court to enjoin Mr. Dougan from contacting family, friends, or neighbors of the undersigned's law firm, Teresa Vila and Karla McCurley, sanction him for attorneys' fees, and strike him as a witness in this case.

### 7.1(a)(3) STATEMENT

Undersigned counsel contacted Plaintiffs' counsel who has advised as follows: " We take no position whatsoever regarding your motion. We do not represent Mr. Dougan, nor have we ever represented him. The relief sought has nothing to do with our representation of Lydia Adams, the Plaintiff in this case.  As such, we take no position and defer to the Court. Please be sure to have these sentiments expressed in the certificate of conference."

The motion should be granted.

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a copy of same via email to: **WALLACE B. MCCALL, ESQUIRE**, and **THEODORE J. LEOPOLD, ESQUIRE,** COHEN, MILSTEIN, SELLERS & TOLL, PLLC, 2925 PGA Blvd., Palm Beach Gardens, Florida 33410, wmccall@cohenmilstein.com and tleopold@cohenmilstein.com this **13ᵗʰ** day of April, 2015.

> PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
> Attorneys for Defendants
> 2455 East Sunrise Boulevard, Suite 1216
> Fort Lauderdale, Florida 33304
> Telephone (954) 462-3200
> Telecopier (954) 462-3861
>
> BY      *s/Richard A. Giuffreda*
> SUMMER M. BARRANCO
> Florida Bar No. 984663
> RICHARD A. GIUFFREDA
> Florida Bar No. 705233